ELISHA JOHNSON vs. THE WILLIMANTIC LINEN COMPANY.

Whether, as between two assignees of a patent-right invalid for the want of novelty, neither of whom has any knowledge or opportunity of knowledge in respect to its validity, and where the vendor acts in good faith, and there is an absence of fraud or express warranty, and no representation of fact other than the mere fact of sale indicating that he professed to sell the patent as valid, the vendor should be holden to an implied warranty and failure of consideration, or the vendee be permitted to defend when sued for the price upon the ground of a mutual misconception of a fact :—*Quære.*

However that may be, where there is not only an absence of fraud, express warranty, representation as to the validity, or other fact or circumstance indicating that the vendor professed to sell the patent as valid, but clear evidence on the face of the instrument that the parties mutually contemplated the possibility that the patent was invalid, and provided by the form of the instrument and its stipulations for the contingency, there is no ground on which a vendee can defend in an action for the consideration.

The specification of a patent is to be so construed as to sustain it if possible.

A patentee who describes a composition for producing a particular effect in a process in his specification, but does not describe the particular ingredients as essential, and does not claim the composition as described, is not confined to the particular composition, and the use of other and equivalent ingredients by others to produce the same effect is a use of the process.

The use of a part of a mechanical device invented to produce a particular general effect, in connection with a substituted device, to produce another part of the same general effect, is a use of the patent.

BILL IN EQUITY, brought to the superior court for Hartford county, alleging that the respondents, a joint stock corporation, had entered into a contract with the petitioner, by which they purchased of him a certain patent owned by him, for an improved process for dressing and finishing linen and cotton thread, and agreed to pay him therefor, besides the sum of $2,000 which was paid down at the time, one-half cent for every dozen spools of thread which the respondents should thereafter manufacture by the process secured by the patent; and praying for an account of the thread so manufactured and the payment of the amount that should be found due to the petitioner, and a decree that the respondent should thereafter render a semi-annual account. Upon the petition and the answer of the respondent the court found the following facts :—

On the 15th°of May, 1855, letters patent were granted to one Henry Terry, as the assignee of John M. Heck, the inventor, for an alleged " new and useful improvement in the process for finishing and dressing cotton thread." The following is the specification annexed to the patent.

" Be it known that I, John Mitchell Heck, of Plymouth, Litchfield county, state of Connecticut, have discovered a new and useful improvement in the process for finishing and dressing linen and cotton thread. My improvement consists in saturating the thread with a size or liquid made of mucilaginous ingredients and containing the extract of saponaria, salep root and soap, and when thus saturated subjecting the thread to a series of rapidly revolving brushes, whereby the thread is polished and dried in passing over the brushes, giving the thread a smooth surface and a high lustre. The strength of the thread is also increased and it remains flexible and pliable. The extract of saponaria root, salep root and soap are the most important ingredients for the size, and the subjecting the thread to the friction of the revolving brushes is what brings out the lustre which these extracts contain and gives the smooth surface and finish to the thread. I have found the following ingredients and proportions successful in securing the desired lustre and finish to the thread, although they may be varied according to the judgment, skill or fancy of the manufacturer :—*For White Thread.* 2 oz. saponaria or soap root, 2 oz. salep root, $\frac{1}{2}$ lb. soap of Marseilles, $\frac{1}{8}$ lb. loaf sugar, 10 lbs. water, $1\frac{1}{2}$ lbs. gum arabic, $1\frac{1}{2}$ lbs. white starch. *For Black Thread.* $\frac{1}{2}$ lb. saponaria root, $\frac{1}{4}$ lb. salep root, 10 lbs. water, $\frac{1}{4}$ lb. flaxseed, $\frac{1}{2}$ lb. brown sugar, 2 oz. glue, 2 oz. gum arabic, 2 oz. brown soap. *For Fancy Colors.* $\frac{1}{2}$ lb. saponaria or soap root, $\frac{1}{4}$ lb. salep root, 10 lbs. water, $\frac{1}{2}$ lb. flaxseed, $\frac{1}{2}$ lb. brown sugar, 2 oz gum arabic, 2 oz. glue. The size is thus formed ready for use. It is to be applied to the thread by being placed in a small vat or a basin in which are fixed two rollers, one immediately above the other, and between which the thread passes the under roller, turning in the liquid, and thus the thread becomes saturated with the size as in a com-

mon dresser. The thread then passes over a series of rapidly revolving brushes, or like means of producing friction of that character, by which the thread is dried without any other means as it passes along. A permanent lustre and color are thus given to the thread with a smooth surface resembling silk, the strength is increased, and the thread remains flexible and pliable.

" A convenient arrangement of machinery for applying the size may be made as follows :—On an upright frame or curb place a number of spools containing the thread. From these spools the threads unwind and pass into the vat or basin containing the size and between the two rollers as in a common dresser, then horizontally over the rotary brushes, and are then carried along and taken up by other spools in the ordinary way and by machinery in common use.

" It is not the composition itself used for the size, nor any particular arrangement of machinery for applying it that constitutes the claim I intend to embrace in this specification. But what I do claim as my invention and which I desire to secure by letters patent is the using (or in other words subjecting the thread to the use, action and friction,) of a series of rapidly revolving brushes, to polish, soften and dry the thread after having been sufficiently saturated with a size substantially such as described, whereby smoothness, lustre, pliability and strength are imparted to the thread. JOHN MITCHELL HECK."

Terry, the patentee, on the 1st of April, 1856, assigned the patent to the petitioner. On the 9th day of June, 1856, the petitioner and the respondents entered into the following agreement in writing and under seal :—

" This agreement, made and entered into this 9th day of June, 1856, by and between Elisha Johnson, of Wethersfield, party of the first part, and the Willimantic Linen Company, a joint stock corporation, party of the second part, witnesseth :

" That in consideration of the agreements hereinafter made and entered into by said company, the said Johnson hereby agrees to and with said company to sell, and does sell, assign and transfer to them, the right, title and interest acquired by

Johnson *v.* Willimantic Linen Company.

the said Johnson by the assignment from Henry Terry, as hereinafter mentioned, in and to an invention secured by letters patent of the United States, granted to said Henry Terry as the assignee of John M. Heck, dated May 15th, 1855, for an invention described in said letters as a new and, useful improvement in the process for dressing and finishing linen and cotton thread, which interest of the said Johnson was acquired by virtue of an assignment of said invention so secured from said Terry, dated April 1st, 1856, subject to certain reservations and restrictions therein specified, and to which assignment and letters patent reference is hereinafter had. To have and to hold the same to said company, to their use and behoof and to the use and behoof of their legal representatives, for the term of years for which said letters patent were granted, as fully as the same would have been held and enjoyed by said Johnson, had said assignment by him not been made.

" The said company, in consideration of said agreement of said Johnson, hereby agrees to and with him to pay to him, on or before the first day of October, 1856, the sum of two thousand dollars, and also furthermore agrees to pay to him the additional sum of one half cent for each and every dozen spools of thread which said company may hereafter manufacture in the way and by the process secured by the patent herein assigned, so long as said patent shall be maintained and held secure by the courts ; which said sum of one half cent for each dozen of spools is to be paid by said company at the expiration of every six months from the date of this instrument. It is further understood and agreed that the half cent per dozen is for spools holding two hundred yards, and that if spools are put up holding more or less than two hundred yards, then the price is to be in proportion. In witness whereof, &c."

Thereupon the respondents paid to the petitioner the sum of $2,000, and commenced and carried on the finishing of cotton thread by the process covered by the patent, and accounted for and paid over to the petitioner the royalty of one half cent for every dozen spools of thread thus furnished

until the 9th day of June, 1860, but since that time the respondents have refused to render any further account of thread finished by them, or pay any royalty thereon, though often requested by the petitioner.

After the 9th day of June, 1860, the respondents finished thread by the use of machines constructed in accordance with the drawings and specifications of certain other letters patent, granted to Lawson C. Ives, and bearing date the 17th day of July, 1860, in making which machines the respondents used some of the lags theretofore used by them upon the Heck machines, and in such finishing the respondents used a size not containing either the extract of saponaria root, the extract of salep root, or soap, but which produced substantially the same effect upon the thread as the size specified in the patent granted to Terry.

In order to show that the patent issued to Terry was invalid, the respondents offered evidence to show, and the court found the fact to be, that on the 2d day of November, 1853, letters patent were granted by the government of Great Britain to Marton & Langshaw, and May 25th, 1854, to William Culden, for improved methods of dressing thread, the inventions described in which patents were substantially the same as the invention patented by Terry as assignee of Heck. This was all the evidence offered by the respondents to prove the invalidity of that patent. The petitioner offered evidence to prove, and the court found, that the invention patented by Terry was made by Heck between the years 1846 and 1848, while he was employed at Augsburg, in Bavaria, as a dyer, and that he between those dates constructed two machines, one more complete than the other, both of which were used by his employers in their establishment in dressing thread for market in the way and by the means described in the patent, without any secresy and with his consent and allowance, and that he left the machines in the possession and use of his employers. The petitioner objected to the admission of the English patents in evidence, upon the ground that such evidence was irrelevant and immaterial, because the form of the written agreement between the petitioner and the respondents,

the expressions used therein, and the position of the parties, showed that there was a sufficient consideration for the same, whether the patent was valid or invalid, but the court *pro forma* overruled the objection and admitted the evidence for the purpose of finding the facts and reserving the question. Upon these facts the court found that the process of dressing thread so used by the respondents since June 9th, 1860, was the same process secured by the patent issued to Terry, unless that patent was to be so construed as to necessarily require the use of a size of the particular composition described in it, or was to be so construed as to necessarily exclude every means of drying the thread except by friction of the brushes, or was to be so construed as to necessarily require the use of a series of independent cylindrical revolving brushes.

The court further found, that the method of dressing thread so employed by the respondents, and described in the patent issued to Terry, and also in the patent issued to Ives, was of very great value, and had been of very great benefit to the respondents, its effect having been to make three cord cotton thread, which was before of but little value, of very great value; and that the respondents had never been deprived of or molested in their use of the same, and that no court had ever decided that the patent granted to Terry was invalid.

Upon these facts the superior court reserved for the advice of this court the following questions :—

1. Whether the evidence so offered to show the invalidity of the patent issued to Terry was admissible for that purpose.

2. Whether the patent issued to Terry was invalid, on account of the invention patented therein having been publicly used for profit in Bavaria by Heck's employers, with Heck's consent and allowance, more than two years prior to the application by Heck for a patent from the United States.

3. Whether, upon the true construction of the agreement between the petitioner and the respondents, and the patent issued to Terry, the invention of Heck was limited and re-

stricted to the use of a size such as that described in the patent.

4. Whether, upon the true construction of the agreement and patent, the invention of Heck necessarily excluded all other means of drying the thread finished by said process except the friction of brushes.

5. Whether, upon the true construction of the agreement and patent, the invention was restricted to the use of a series of independent cylindrical revolving brushes.

*B. F. Thurston,* of Rhode Island, and *C. E. Perkins,* for the petitioner.

*G. Gifford,* of New York, and *McFarland,* for the respondents.

BUTLER, J. The first question reserved for our advice in this case must be answered in the negative. The evidence was not admissible.

It is not material to enquire whether or not generally, on the sale of a patent right, there is an implied warranty of its validity. There is undoubtedly a strong current of authority in that direction. And the cases in this country where in actions for the price of a patent right or patented machine the defendant has prevailed on the ground of a failure of consideration, are quite numerous. Where there was an express warranty, or the vendor by representation expressly professed to sell the patent as a *valid* one, and the purchaser relied on that profession, or where the vendor knew that there was a defect in the patent and that it was invalid and concealed the fact, (although he made no express representation whatever,) and in such concealment was guilty of fraud, the correctness of the decisions cannot be questioned. And one or another of these elements existed in a majority of the cases collected by Mr. Law in his Digest, many of which have been cited on this trial. But it is questionable whether as between two assignees of a patent right, neither of whom has any opportunity to know whether it is invalid for want of

novelty or not, especially since the reorganization of the Patent Office and a provision for a determination of that question by examiners before the patent is granted, and a series of federal decisions holding such a patent *prima facie* evidence of novelty, the vendor who acts in good faith, in the absence of fraud, express warranty, or any representation or fact other than the mere fact of sale indicating that he sold the patent as valid, the vendor should be holden to an implied warranty and failure of consideration on that ground, if in fact invalid, or the vendor be permitted to defend upon the ground of a mutual misconception of a fact. The English courts would not now so hold on either ground; and I am inclined to think that, upon principle, a discrimination should be made here.

But however that may be where, as in this case, there is not only an absence of fraud, express warranty or representation as to the validity, and of any fact or circumstance indicating that the vendor *professed* to sell a *valid* patent, or that the parties mutually misconceived, but clear evidence on the face of the instrument that the parties mutually contemplated the possibility if not the probability that the patent was invalid, and provided by the form of the instrument and its stipulations for the contingency, it is very clear that there is no ground on which the vendee can be permitted to set up a failure of consideration. The instrument, according to what seems its clear import and meaning, binds the vendee to pay so long as he is not judicially disturbed in the enjoyment of the patent, and releases him from the obligation when in fact thus disturbed. It is not pretended that he has been so disturbed ; and if he has in fact enjoyed, he must pay, and cannot be permitted to set up by way of defence a defect, if there be one, in the patent.

The opinion thus expressed renders the second question wholly immaterial.

The remaining three questions involve a construction of the specification and will be considered together.

The court find that the way and process used by the defendants is the same way and process secured by the patent, unless

the patent is to be so construed as to necessarily require the use of a size of the particular composition described in Heck's patent; or is to be so construed as to necessarily exclude any and every means of drying the thread except by friction of the brushes; or is to be so construed as to necessarily require the use of a series of independent cylindrical revolving brushes.

The rules of construction in relation to specifications adopted by the federal courts are peculiar but are generally followed. Construing the specification by those rules, we are satisfied that it does not call necessarily for a size of the particular composition described by Heck. He describes the saponaria root, salep root and soap as the "most important" of his size, but not as *essential* ingredients. They are also to be used in connection with other mucilaginous ingredients. He says therefore that his size contains those articles, and that they are the most important; but he disclaims the composition as such, and claims merely the saturation of the thread with a size substantially such as described. Construing the parts of the specification together therefore, and adopting the rule that it is to be so construed as to sustain it if possible, we are of opinion that it does not necessarily require the particular size described; but that any mucilaginous size containing ingredients of equivalent effect with saponaria, salep and soap is a use of that part of the process.

And we are also of the opinion, (adopting the same rule of construction,) that the defendants use a machine of equivalent effect with that of Heck. The object of Heck's arrangement of brushes was to polish, soften and dry the thread. This was to be done by revolving brushes. The defendants claim that although they use a revolving brush, and thereby polish and soften the thread, yet that they do not use a *series* of brushes for the purpose of *drying* it. They do use however a material part, and the most material part of Heck's process. They brush by a revolving brush, in connection with the use of a size for the purpose of polishing and softening the thread. They use a part of Heck's process therefore, and the most material part; and the fact that they dry by an

additional and different device does not justify them in the use of the revolving brush to polish and soften. A difference in use which is merely a difference in extent, is not a different use ; and under the finding of the court we think it very clear that the defendants are liable, and the superior court must be advised to take the account and decree accordingly.

In this opinion the other judges concurred.